UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) ) ) | |
| Plaintiff, ) | **Case Number 21-2080** |
| ) | |
| vs. ) | |
| ) | March 9, 2023 |
| ) | 10:32 a.m. |
| **WAL-MART STORES EAST, LP, WAL-MART STORES, INC.,** ) ) | |
| ) | |
| Defendants. ) | |

<u>**TELEPHONE STATUS HEARING**</u>

**BEFORE THE HONORABLE ERIC I. LONG**
United States Magistrate Judge

Court Reporter:

LISA KNIGHT COSIMINI, RMR-CRR
U.S. District Court
201 South Vine
Urbana, Illinois 61802

Proceedings recorded by digital sound recording
and reported by mechanical stenography from said
recording.  Transcript produced by computer.

A P P E A R A N C E S :


For the Plaintiff:

        **JEANNE B. SZROMBA, ESQUIRE**
        **JONATHAN DELOZANO, ESQUIRE**
        Equal Employment Opportunity Commission
        230 South Dearborn Street, Suite 2920
        Chicago, Illinois 60604
        312-872-9692
        jeanne.szromba@eeoc.gov
        jonathan.delozano@eeoc.gov



For the Defendants:

        **ASHLEY L. ORLER, ESQUIRE**
        Constangy, Brooks, Smith & Prophete, LLP
        300 South Wacker Drive, Suite 1050
        Chicago, Illinois 60606
        773-661-4713
        aorler@constangy.com

```
 1                    (Telephonic hearing beings, 10:32 a.m.)
 2              COURTROOM DEPUTY:  ... -80 in the matter of
 3   EEOC v. Walmart Stores East, et al.
 4              Present for Plaintiff is Attorney Jeanne
 5   Szromba and Gregory Gochanour [sic].
 6              Present for Defendant is Attorney Ashley
 7   Orler.
 8              THE COURT:  All right.  Good morning,
 9   everybody.  This is Eric Long.
10              We're together this morning at my request.  As
11   I was looking at the two pending motions to compel,
12   they seemed pretty straightforward; and I thought it
13   would be easier just to get everybody on the phone
14   together rather than writing up a long order.
15              I want to take up Number 35 first.  From
16   EEOC's perspective -- I'm not sure which of you wants
17   to take the lead on this, but where are we on it?  I
18   know things were filed about a month or so ago.  Has
19   anything changed?
20              MS. SZROMBA:  Your Honor, this is Jeanne
21   Szromba from EEOC.  And, no, nothing has changed.  We
22   still do not have a date for the inspection.
23              THE COURT:  All right.  And do you have your
24   expert in place ready to go for the inspection?
25              MS. SZROMBA:  Yes, we do.
```

1           THE COURT:  All right.

2           Ms. Orler, from Walmart's perspective, what's

3    the delay?

4           MS. ORLER:  Yes, Your Honor.  As we've

5    mentioned in our response brief, we are still waiting

6    for medical records.

7           I will share with Your Honor that we've been

8    working diligently to identify an expert, and we have

9    done so.  We're in the process of retaining that expert

10   just this week.  I received an engagement agreement

11   that I'm reviewing with Walmart.

12          So, I believe no later than next week we will

13   have our experts in place, and we can go ahead and

14   schedule that inspection shortly thereafter.

15          THE COURT:  All right.  Well, let's, let's get

16   it done in 14 days from today then.  So make it --

17          MS. ORLER:  Yes.

18          THE COURT:  -- a priority with your folks.  I

19   want to get -- I want a date scheduled because even if,

20   even if you don't have your expert in place, you

21   control the facility.  So you can take your expert back

22   if you need.

23          So I'm going to allow --

24          MS. ORLER:  Okay.

25          THE COURT:  I'm going to allow Number 35, and

1  we'll get that -- let's get a date in place within
2  14 days from today.
3          MS. ORLER:  Understood.  Thank you, Your
4  Honor.
5          THE COURT:  All right.  Thank you.
6          MS. SZROMBA:  Your Honor, just a quick -- this
7  is Jeanne Szromba again -- quick clarification.
8          THE COURT:  Yep.
9          MS. SZROMBA:  Is your order to have the
10 inspection scheduled to occur within 14 days --
11         THE COURT:  Correct.
12         MS. SZROMBA:  -- or get a date within 14 days?
13         THE COURT:  Oh, no, no, no.  Have it
14 scheduled.  I, I -- if I were to say 14 days from
15 today, it doesn't work with, necessarily with your
16 schedule either.  So I don't want to do that to you.  I
17 want to give you a chance --
18         MS. SZROMBA:  Okay.
19         THE COURT:  Yep.  Just, just coordinate a
20 date --
21         MS. SZROMBA:  Okay.
22         THE COURT:  -- and have a date locked in,
23 then, within 14 days.
24         MS. SZROMBA:  Okay, understood.
25         THE COURT:  Yeah, yeah.

1          And then 36 is the motion for, for medical

2    records.  From Walmart's perspective, it looks like

3    you're trying to ascertain information about whether

4    Mr. Sleeth was qualified to perform the essential job

5    functions.  Is that what you're trying to do here?

6          MS. ORLER:  Yes, Your Honor.  And just to be

7    very clear, we're only limiting the request to medical

8    records pertaining to his developmental disabilities.

9    And the EEOC has drawn a line in the sand at the date

10   range; and we are, of course, seeking records predating

11   the EEOC's line in the sand.

12          THE COURT:  Right.  And how far back are

13   you -- because he's 26, and so it's -- you know, I

14   mean, we don't have to go back to birth here -- do

15   you? -- to get the information you need?

16          MS. ORLER:  Certainly, no, Your Honor.  But to

17   date, we have not seen any medical records relating to

18   his initial diagnosis and any treatment or testing

19   related to his autism and intermittent explosive

20   disorder.  He also has ADHD.  Those are the types of

21   records we're seeking.

22          You know, certainly, the EEOC has been working

23   very closely with Mr. Sleeth and his legal guardian,

24   Ms. Sleeth, who is Mr. Sleeth's mother.  And certainly

25   they can provide some context on the timing of how far

 1  back those documents go.

 2          THE COURT:  All right.  And we don't --

 3  Ms. Szromba, what's your, what's your thoughts on this?

 4  I know that you wanted to limit it to two years --

 5          MS. SZROMBA:  Well, --

 6          THE COURT:  -- prior to his application.

 7          But we do need to get into -- and one of the

 8  things you have to prove is that he was qualified to

 9  perform the job, and so certainly Walmart can challenge

10  that.

11          MS. SZROMBA:  Yes, Your Honor.  We don't

12  disagree with that.

13          What we have said from the beginning -- the

14  diagnoses that, that Ms. Orler's referring to, those

15  diagnoses were, you know, from early childhood.  And,

16  and they're just mentioned in his school record.

17          And so they -- you know, as far as any,

18  anything having an effect on his daily life or his

19  employment, none of it has ever had that effect.

20          The, the one instance that she refers to, the

21  explosive disorder, --

22          THE COURT:  Yeah.

23          MS. SZROMBA:  -- it was one incident when he

24  was a young teenager, you know, in school, or

25  something; nothing since.

1            And, in fact, we have had -- since the motions

2    were filed, EEOC and Walmart have been at the

3    deposition of a third party, which is the organization

4    that has worked with Mr. Sleeth since he started

5    working back -- you know, since he did not get the job

6    at Walmart, he got another job and has been working

7    since.  And that deposition made clear that there's

8    never been any issues with his performance, behavior,

9    punctuality, judgment, you know, all of his adult

10   working life for the last four years.

11           And so our concern is:  *When you say, okay,*

12   *when he was a child* -- you know, which is typical;

13   children are diagnosed with autism when they're young,

14   very young.  You know, there's nothing beyond the fact

15   that he had that diagnosis.  And so, you know, to say:

16   *Well, that means you've got to produce every single*

17   *medical record that this kid has had since, you know,*

18   *since he was a child, you know, a toddler* -- that's

19   what we're trying to avoid here because it has nothing

20   to do with his ability to work at a job.

21           And, certainly, we had said all along we

22   should, you know -- or Walmart should feel free to talk

23   to his employers and, you know, his -- the, the

24   organization that helped get him his job, et cetera.

25   That would be very relevant.

```
 1              And experts watching -- you know, the
 2      inspection, looking at what the job at Walmart would be
 3      like, that seems highly relevant to his qualifications
 4      to do the job, not his diagnosis as a young child of
 5      having autism/ADHD.
 6              So it's just, you know -- and that's why the,
 7      everything has been delayed in this case.
 8              THE COURT:  Ms. Szromba, when did --
 9              MS. SZROMBA:  So --
10              THE COURT:  -- when did Mr. Sleeth finish high
11      school?  Do you know what age he was?
12              MS. SZROMBA:  I believe he was 18.
13              THE COURT:  Okay.
14              MS. SZROMBA:  Yeah.
15              MS. ORLER:  And, Your Honor, if I may, --
16              THE COURT:  Yeah.  Hold on one second,
17      Ms. Orler.  We'll let --
18              MS. ORLER:  I'm sorry.
19              THE COURT:  I'll give you a reply.
20              MS. ORLER:  Okay.
21              THE COURT:  I just want to finish my thought.
22              And so, Ms. Szromba, from, from -- after his
23      turning 18, are there records that relate to these
24      things?  Because I don't want to, I don't want to --
25      just because you bring a lawsuit doesn't mean that we
```

1    can explore your records back to birth.

2            But, certainly, during his working career,

3    they should have some right to explore whether he's

4    able to perform the duties as necessary.

5            But what, what records are you aware of that

6    may or may not exist from his 18th birthday?

7            MS. SZROMBA:  As far as we know, Your Honor,

8    there are no other rec-- there are no records that

9    exist relating to an autism diagnosis or ADHD.

10           As you're probably, you know, familiar with,

11   when -- you know, those kinds of diagnoses occur when a

12   person is very young, but there's no treatment for it,

13   per se.

14           THE COURT:  Yeah.

15           MS. SZROMBA:  So there are no medical

16   documents relating to that, other than the fact that he

17   had that diagnosis.

18           THE COURT:  Okay.  All right.

19           Ms. Orler, what were your thoughts?  I didn't

20   mean to cut you off, but I wanted to finish that.

21           MS. ORLER:  No, Your Honor.  And I apologize.

22   I did not mean to interrupt by any means; but, thank

23   you, Your Honor, for allowing the opportunity.

24           So, with respect to Ms. Szromba's statements,

25   first and foremost, the EEOC itself is relying on

1  medical records from Mr. Sleeth's tenure in high

2  school.  So we would at a minimum suggest that we are

3  allowed to go back through his high school years and

4  obtain medical records related to his autism.

5          And, certainly, one of the documents that

6  we've seen from the Illinois School for the Deaf -- it

7  was produced through that school -- relates to

8  incidents that occurred involving Mr. Sleeth's

9  outbursts at school to which he -- you know, the school

10  addressed with him.  So we would at a minimum request

11  that documents go back through high school.

12          With respect to medical records and

13  Ms. Szromba's statement that they're not aware of any

14  that reference his developmental disabilities, well, to

15  my knowledge, they don't have those documents.  So

16  that's a big question mark here, is what documents

17  exist.  Now, certainly, we have some medical records

18  after, after 2017 from Mr. Sleeth's medical providers

19  that do reference his autism, his ADHD, intermittent

20  explosive disorder.  And those documents do discuss

21  some of the issues that are ongoing with respect to

22  him.

23          So, certainly, if he had those diagnoses

24  predating 2017, to which we believe he does, some of

25  those medical records would reference and mention those

1  developmental disabilities.  And so we would suggest

2  that we would like copies of those.

3          Ms. Szromba can certainly argue -- and I

4  expect the EEOC to argue in this case -- that, you

5  know, most recently Mr. Sleeth has not had issues while

6  performing work.

7          From our perspective, the work he's doing is

8  very, very different from the position he applied for

9  at Walmart.  That will be a, that will be a fight the,

10 the parties can have down the road.  But, certainly,

11 when we're discussing what is relevant to this case, we

12 would suggest and propose that we can at least go back

13 through Mr. Sleeth's high school years and obtain

14 information about his developmental disabilities in the

15 medical records.

16          THE COURT:  What records are you referencing

17 that the EEOC is using from prior to his 18th birthday?

18          MS. ORLER:  Yes, Your Honor.  So, in their

19 mandatory disclosures, which have been updated four

20 times and most recently in December of last year, the

21 EEOC is pointing to an audiology report from an

22 audiologist who works at the Illinois School for the

23 Deaf.  And my understanding is that report is dated

24 2010, Your Honor.

25          And so, you know, the EEOC is going back to

1   2010 when this audiologist examined Mr. Sleeth.  At a

2   minimum, we should be allowed to do the similar --

3   right? -- obtain his medical records relating to his

4   developmental disabilities through that time period.

5               THE COURT:  Ms. Szromba, --

6               MS. SZROMBA:  Your Honor, the --

7               THE COURT:  -- any thoughts on that?

8               MS. SZROMBA:  Sure.

9               The 2010 medical record, I'm still very

10  puzzled by why this keeps coming up.  Walmart had never

11  conceded that Mr. Sleeth was deaf; and we were hoping

12  to get a stipulation on that, but we didn't.

13              So we said:  *Okay, well, we can give you*

14  *audiology records to show that he's deaf so that we can*

15  *set that issue aside and focus on his qualification to*

16  *do the job*.  So we simply provided records from that,

17  that date to show that, per the audiologist who

18  confirmed his deafness, he's deaf.  That's the only

19  thing that was relevant.  So we, we provided -- and

20  that's an audiologist.  Obviously, an audiologist

21  doesn't have medical records relating to any other

22  issues.

23              On the -- so we have not relied on any medical

24  issues.  And, again, you know, we're, we're going back

25  to the point about:  What, what does a disabled person

```
 1   have to do when he believes he's been discriminated
 2   against?
 3            And one thing we're -- we hope is not going to
 4   be the case is that you get to go look at somebody's,
 5   some kid's high school record where he may have had an
 6   issue in high school -- you get to do that when you're,
 7   you know, when you're disabled and you're trying to get
 8   a job.  You get to go back to high school and see if
 9   there's one incident in high school that we can rely
10   on.
11            You don't do that with a nondisabled job
12   applicant who doesn't get the job.  A company doesn't
13   get to go back and say:  Let's just see what you did in
14   high school, and we can show that, you know, you
15   wouldn't -- you don't have the temperament for the job,
16   or whatever.
17            So that should not be something that -- our
18   position would be the Court should not go to that point
19   when considering a situation like this.  So we don't --
20            THE COURT:  Do you have --
21            MS. SZROMBA:  -- have medical records we're
22   relying on.
23            I'm sorry.
24            THE COURT:  Ms. Szromba, do you have high
25   school records that you are going to use in support of
```

 1   your claims?

 2           MS. SZROMBA:  No.

 3           THE COURT:  No.  All right.

 4           MS. ORLER:  Your Honor, --

 5           THE COURT:  Yeah, go ahead.

 6           MS. ORLER:  Your Honor, --

 7           THE COURT:  Go ahead.

 8           MS. ORLER:  If I can please address this since

 9   it's our motion.

10           THE COURT:  Yeah.

11           MS. ORLER:  So a couple of responses to that.

12   First and most, there have been hundreds of pages of

13   documents produced through the Illinois School for the

14   Deaf, and those documents came in through the EEOC.  So

15   I really, really am surprised to hear Ms. Szromba say

16   that there are not high school records being relied on

17   in this case that are relevant to this case.

18           Secondarily, it's not just an audiology

19   report.  I'm looking at the fourth supplemental

20   disclosures that the EEOC provided us who identified

21   Audiologist Leslie Lynch as a Rule 26(a)(2)(C) witness

22   who will -- quote -- she treated Kaleb Sleeth and has

23   information about his medical condition, hearing

24   impairment, and the ways he can communicate given his

25   condition.

1          A key issue in this case, Your Honor, is the

2     level of communication.  The Cap 2 Associate position

3     at Walmart requires a substantial amount of customer

4     interaction.  We suspect -- and it is Walmart's

5     position at this time -- that Mr. Sleeth was not

6     qualified to have that customer communication, not

7     because he's deaf per se, but because of these

8     developmental disabilities.

9          He has never worked a job, to our knowledge,

10    where he has had to interact with customers, answer

11    questions, deal with -- we all know this world.  There

12    are, there are customers who have very short patience,

13    unfortunately, with employees.  And how would he

14    interact with that and deal with that in this situation

15    is a huge question in this case.

16          So we maintain that obtaining these medical

17    records at least through his high school years, to

18    which the EEOC has produced hundreds of pages

19    pertaining to his high school at the Illinois School

20    for the Deaf -- he worked at that time during his high

21    school years as a, I believe it was a lawn care, kind

22    of landscape -- and they are relying on those records

23    to show the work he can perform.

24          So I'm very surprised to hear that now they're

25    not relying on any records from his high school.

EEOC v. Wal-Mart, Case No. 21-2080 -- Status Hearing (03-04-2023)  17

```
 1              THE COURT:  All right.
 2              Ms., Ms. Szromba, the complaint references
 3    things that happened in January of 2019.
 4              MS. SZROMBA:  Correct.
 5              THE COURT:  How old was, how old was
 6    Mr. Sleeth at the time that he applied for the job?  Do
 7    you know?
 8              MS. SZROMBA:  Oh, my gosh.
 9              THE COURT:  I mean, I know he's 26 now, but I
10    don't want to -- I don't --
11              MS. SZROMBA:  I'm doing the same -- he is 26
12    now, Your Honor, and I should be able to do that math
13    more quickly than I am.  So that would be --
14              THE COURT:  So he was about 23-ish.
15              MS. SZROMBA:  I guess four years would be
16    twenty-- 21.
17              THE COURT:  22, 23, something like that?
18              MS. SZROMBA:  Yeah.  I believe 22, Your Honor,
19    but I -- his birthday's in August.
20              THE COURT:  All right.
21              MS. SZROMBA:  So, yeah, 21/22-ish.
22              THE COURT:  All right.
23              MS. SZROMBA:  Or 22/23.
24              THE COURT:  So what I'm trying to balance here
25    is I want to allow Walmart to explore the information
```

1  necessary for its defense to challenge what Plaintiff

2  has to prove, which is that he is qualified to perform

3  the essential job functions.

4          But I also want to protect Mr. Sleeth's

5  privacy.  So what I'm going to do with this is I'm

6  going to allow all the records as it relates to his

7  developmental disabilities back to his 18th birthday.

8  And then I'm going to allow a limited production of

9  documents that relate specifically and only to the

10  diagnosis as it relates to his autism and any other

11  developmental disabilities.  So I'm not going to get

12  into any treatments or anything that led to it, but the

13  very limited paperwork at the time that he was

14  originally diagnosed with those developmental

15  disabilities and nothing beyond that.

16          And so, Ms. Szromba, if you can coordinate

17  that with Mr. Sleeth's guardian.

18          MS. SZROMBA:  Mm-hmm.

19          THE COURT:  Do you understand what I'm

20  ordering?

21          MS. SZROMBA:  I do, Your Honor.  It's records

22  relating to when he was diagnosed with, with both those

23  conditions to the extent --

24          THE COURT:  Yeah.

25          MS. SZROMBA:  -- that they exist.  But I

 1  will -- we will certainly --

 2          THE COURT:  Yeah.

 3          MS. SZROMBA:  -- talk to her about that.

 4          THE COURT:  And any -- yep.  And then any

 5  medical records after his 18th birthday related to his

 6  developmental disabilities.

 7          MS. SZROMBA:  Okay.

 8          THE COURT:  Okay?

 9          All right.  And that should --

10          MS. SZROMBA:  Okay.

11          THE COURT:  -- give Walmart enough information

12  to challenge whether he was qualified to perform the

13  job without -- while also protecting Mr. Sleeth's

14  privacy from before he became an adult.

15          All right.  So anything else in those two

16  motions that I may have missed, Ms. Szromba, from your

17  end?

18          MS. SZROMBA:  The only thing, Your Honor, is

19  that we are now past the close of discovery.

20          THE COURT:  Yeah.  I was going to close with

21  that thought, which is --

22          MS. SZROMBA:  Okay.

23          THE COURT:  -- I want the two --

24          MS. SZROMBA:  Okay.

25          THE COURT:  -- of you to talk about what you

```
 1   really anticipate needing.  And let's kind of get this
 2   thing back on track and, and submit to me a proposed
 3   schedule that allows you to get your work done.
 4              MS. SZROMBA:  Okay.
 5              THE COURT:  All right.
 6              MS. ORLER:  Your Honor, I apologize.  I don't
 7   mean to keep us much longer, but I just want to be
 8   really clear about your order with respect to Walmart's
 9   motion.  So, --
10              THE COURT:  Yeah.
11              MS. ORLER:  -- to the extent there are records
12   that pertain only to Mr. Sleeth's diagnosis -- or
13   diagnoses of developmental disabilities that predate
14   his 18th birthday, those are to be produced but only --
15              THE COURT:  Only the --
16              MS. ORLER:  -- relating to the diagnosis.
17              THE COURT:  Only the diagnosis records.
18              MS. ORLER:  Okay.
19              THE COURT:  So the actual diagnosis itself.  I
20   don't want you to get into all the treatment and
21   everything that led to that diagnosis; but the limited
22   records that will give you sufficient information to
23   demonstrate that Mr. Sleeth, prior to his 18th
24   birthday, was diagnosed with these developmental
25   disorders.
```

 1              MS. SZROMBA:  Your Honor, can I --

 2              THE COURT:  And then after --

 3              MS. SZROMBA:  Oh, go ahead.

 4              THE COURT:  Then after his 18th birthday --

 5     and then after his 18th birthday, you can get the

 6     records that relate to those disabilities.

 7              MS. ORLER:  Thank you, Your Honor.

 8              MS. SZROMBA:  Your Honor --

 9              MS. ORLER:  That makes sense.

10              MS. SZROMBA:  And just to -- the first part of

11     what you just mentioned, Your Honor, the records that

12     show that he had the diagnosis, would it be sufficient

13     for us to stipulate --

14              THE COURT:  I --

15              MS. SZROMBA:  -- that he had those diagnoses?

16              THE COURT:  Yeah.  I'll let you talk to

17     Walmart about that.  If they'll agree to that --

18              MS. SZROMBA:  Okay.

19              THE COURT:  If they'll agree to the

20     stipulation of the particular disabilities, that's

21     fine.

22              MS. SZROMBA:  Okay.

23              THE COURT:  But otherwise, if not, then just

24     get the one where you've got the finding by the medical

25     provider that he was diagnosed with those conditions.

 1          MS. SZROMBA:  Okay.  We may have already

 2   produced that, but I will check.

 3          THE COURT:  Yeah.  Okay.  All right, sounds

 4   good.  Okay.

 5          MS. SZROMBA:  Okay.

 6          THE COURT:  All right, let me know --

 7          MS. ORLER:  Your Honor, I --

 8          THE COURT:  -- if you need anything.

 9          Oh, yeah.  Go ahead.  Who is this?

10          MS. ORLER:  I apologize.

11          THE COURT:  That's all right.

12          MS. ORLER:  This is Ashley Orler.

13          THE COURT:  Go ahead.

14          MS. ORLER:  One more thing that was filed I

15   just want to make sure that we address in some way.  We

16   had filed our original motion to compel, and the EEOC

17   was concerned about one line in that motion

18   containing --

19          THE COURT:  Oh, I didn't look at the sealed

20   document.

21          MS. ORLER:  -- what they believe is

22   confidential information.

23          THE COURT:  Yeah.

24          MS. ORLER:  So we did file a, kind of a second

25   motion to replace the original motion.  I just wanted

 1   to put that back on your radar.

 2          THE COURT:  Yeah, that's -- is that 37 and 38,

 3   if you're looking at the docket, Motion for Leave to

 4   File Document Under Seal and then the sealed document

 5   itself?

 6          MS. ORLER:  Well, we also did file a motion

 7   to file under seal, but the replacement motion is

 8   Number 40.

 9          THE COURT:  Oh, okay.  All right, all right.

10          So let's, so let's do this then.  Let's, let's

11   strike your 36, and we'll use the attached Exhibit A.

12          I'll grant Number 4-- Brent, you following all

13   this?

14          COURTROOM DEPUTY:  Yeah.  I think I'm with

15   you, Judge.

16          THE COURT:  Okay.  So we're going to grant

17   Number 40, which is a Motion for Order to Replace the

18   Motion to Compel.

19          And we'll -- so we'll strike Number 36 as part

20   of that, and we'll enter Exhibit A as the motion.

21          And I haven't even looked at the Motion for

22   Leave to File Under Seal.  I, I can't tell a lie.  So

23   I'll have to look at that and see whether it's -- what,

24   what needs to be done with it.

25          All right.  Does -- two weeks though, the

```
 1   14 days, by then you'll -- you should have a date for
 2   inspection.
 3           Could both of you then submit to me a proposed
 4   schedule about what you think you'll need, and we'll
 5   get -- we'll get you back on, get you back on toward
 6   trial.  Okay?
 7           MS. SZROMBA:  Okay.
 8           MS. ORLER:  Yes, Your Honor.
 9           THE COURT:  Okay.  All right.  Thank you, all.
10           Need anything else --
11           MS. SZROMBA:  Thank you, Your Honor.
12           MS. ORLER:  Thank you.
13           THE COURT:  From Plaintiffs, Ms. Szromba,
14   anything?
15           MS. SZROMBA:  No, nothing from our end.
16           THE COURT:  Okay.  Ms. Orler, --
17           MR. DELOZANO:  I actually --
18           THE COURT:  -- you need anything?
19           MR. DELOZANO:  Oh, I'm sorry.
20           MS. ORLER:  No, Your Honor.  I just --
21           THE COURT:  Okay.
22           MS. SZROMBA:  Oh, go ahead, John.  John might
23   have a thought.  Go ahead.  I'm sorry.
24           MR. DELOZANO:  Yeah, I'm sorry.
25           MS. SZROMBA:  John is my co-counsel.
```

1          MR. DELOZANO:  I just wanted to make sure that

2     the docket is accurate.  I believe that my appearance

3     was stated as Gregory Gochanour, but this is actually

4     Jonathan Delozano.

5          THE COURT:  Oh, okay.

6          MR. DELOZANO:  I just wanted to make sure that

7     that was clear on the record.

8          THE COURT:  All right, thank you.  I

9     appreciate you correcting us.

10         All right.  Thanks, everybody.  Let me know if

11    you need anything.  Otherwise, I'll watch for your

12    schedule and get some new dates adopted for you.

13         MS. SZROMBA:  Okay, thank you.

14         THE COURT:  All right.

15         MS. ORLER:  Thank you, Your Honor.

16         THE COURT:  Thanks, everybody.  Bye-bye.

17              *(Hearing concludes, 10:55 a.m.)*

18    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

19                   REPORTER'S CERTIFICATE

20         I, LISA KNIGHT COSIMINI, RMR-CRR, hereby
      certify that the foregoing, to the best of my ability,
21    is a correct transcript from the proceedings digitally
      recorded before the magistrate judge in the
22    above-entitled matter.  I was not personally present
      for said proceedings.
23         Dated this 5th day of April, 2023.

24    _____    s/Lisa Knight Cosimini_____
                Lisa Knight Cosimini, RMR-CRR
25              Illinois License # 084-002998